# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SARA KAHL, JOYCE PANGELINAN, and JOSEPH HERRERO, on behalf of themselves and all others similarly situated,** | **Civil Action No. 21-10359** |
| **Plaintiffs,** | |
| **v.** | **CLASS ACTION COMPLAINT AND JURY DEMAND** |
| **UNITED STATES FIRE INSURANCE COMPANY,** | |
| **Defendant.** | |

## NATURE OF THE ACTION

1.      Plaintiffs Sara Kahl, Joyce Pangelinan, and Joseph Herrero bring this class action lawsuit for damages, injunctive relief and restitution on behalf of themselves and a class of similarly situated persons who purchased group travel insurance plans from United States Fire Insurance Company ("USFIC"), or its tour operator agents, but whose trips were canceled before they began, in most cases by USFIC's agents, due to COVID-19 travel restrictions.

2.      USFIC's group travel insurance plans are made up of a pre-packaged bundle of coverages offering payment for losses that could arise either pre- or post-departure. All Class Members' trips — and therefore their travel insurance policies — were cancelled prior to departure. Nonetheless, in violation of New Jersey law, USFIC failed to refund premiums attributable to post-departure coverages that were unearned because the trips were canceled.

3.    The Master Policy which governs all the group plans at issue contains an explicit choice of law provision that dictates New Jersey law governs the Master Policy and the rights of the Plaintiffs.

4.    New Jersey law mandates the refund of unearned premiums when a policy is canceled. N.J. Rev. Stat. § 17:29C-4.1. Cancellation of the trips canceled the policies insuring those trips.

5.    Retention of the unearned premiums is also unfair and deceptive and violates the New Jersey Consumer Fraud Act, N.J. Rev. Stat. §§ 56:8-1, *et seq.*, and the common law.

6.    Nonetheless, USFIC has unlawfully failed and refused to refund the unearned premiums attributable to those never-effective coverages.

7.    USFIC's failure to return the unearned premiums to purchasers once the trips were cancelled is unlawful, unjust and unfair. Each member of the proposed Class (defined below) has been similarly injured by USFIC's misconduct, and is entitled to restitution of the premium that USFIC accepted in exchange for insuring against risks it never assumed.

## PARTIES

8.    Plaintiff Sara Kahl is an individual who resides in Salt Lake City, UT.

9.    Plaintiff Joyce Pangelinan is an individual who resides in Spanaway, WA.

10.    Plaintiff Joseph Herrero is an individual who resides in Spanaway, WA.

11.    Defendant USFIC is a Delaware corporation having a principal place of business at 305 Madison Avenue, Morristown, New Jersey.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual Class Members exceed the sum or value of $5,000,000, exclusive of interest and costs; there are more than 100 Class Members as defined below; and USFIC and numerous members of the proposed Class, including Plaintiffs, are citizens of different states.

13.     This Court has jurisdiction over USFIC because its principal place of business is in New Jersey.

14.      Venue is proper in this judicial district under 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTUAL ALLEGATIONS

**A.     The Structure of USFIC's Travel Insurance Plans**

15.     USFIC offers group travel insurance to travelers throughout the 50 states, U.S. Territories and the District of Columbia pursuant to a Master Policy of insurance consciously designed and constructed to choose New Jersey law to govern the rights of the insureds (the "Master Policy").

16.     USFIC issued the Master Policy from its administrative offices at 5 Christopher Way, Eatontown, New Jersey to a trust it formed, owns and controls in order to serve as the policyholder (the "Policyholder"), which Policyholder is located at the same address in New Jersey as USFIC, 5 Christopher Way, Eatontown, New Jersey.

17.     The Master Policy includes an explicit choice of law provision, electing the

laws of the state where "the Policy is issued," here, New Jersey.

18.    USFIC specifically designed and constructed the Master Policy to choose New Jersey law by effectively issuing the Master Policy to itself as the purported Policyholder through the device of a trust that it formed, owns and controls.

19.    USFIC's travel insurance is often sold through travel agencies, tour operators, or other businesses selling travel services ("Travel Agencies" or "Travel Agency"), who offer the insurance to their customers. Each such Travel Agency that wants to offer USFIC travel insurance to its customers executes a "Participation Agreement" with USFIC, by which it agrees to "participate" in the trust serving as the Policyholder under the USFIC Master Policy.

20.    The Travel Agencies are agents of USFIC, the principal. USFIC consented to the Travel Agencies acting on its behalf with respect to the Master Policy, including marketing, sales, customer service, and claims handling and forwarding.

21.    Customers who purchase travel insurance from a Travel Agency receive a USFIC "certificate" of insurance ("Travel Protection Certificate"), which states the terms of the coverages provided to the individual customer (the "Insured").

22.    Because USFIC specifically designed and constructed the Master Policy so that New Jersey law governs the rights of the Policyholder, which it formed, owns and controls, New Jersey law also governs the rights of the Insureds against USFIC.

23.    The named Plaintiffs, and all others similarly situated, purchased Travel Protection Certificates under a Master Policy issued to a USFIC trust Policyholder in connection with travel purchased from Travel Agencies that executed Participation

Agreements and participated in the trust Policyholder under the USFIC Master Policy. As such, they are Insureds under such Master Policy.

    **B.**    **The Travel Protection Coverages Offered**

    24.    The Travel Protection Certificates provide benefits for a series of separately enumerated types of travel-related losses, each of which is set forth in the Schedule of Benefits.

    25.    The maximum per person benefit amount is set forth in Plaintiffs' Travel Protection Certificates' Schedule of Benefits as follows:

| Benefit | Maximum Benefit Amount |
|---|---|
| **Part A - Travel Arrangement Protection** | |
| Trip Cancellation | Trip Cost |
| Trip Interruption | Trip Cost |
| Travel Delay | $2,500 |
| Baggage and Personal Effects | $2,000 |
| Baggage Delay | $300 |
| Non-Medical Emergency Evaluation | $1,500 |
| | |
| **Part B - Travel Insurance Benefits** | |
| Accidental Death & Dismemberment | $50,000 |
| Accident Sickness Medical Expense | $50,000 |
| Emergency Medical Evaluation | $50,000 |

    26.    A true copy of the Travel Protection Certificate is attached as Exhibit A.

*Pre-Departure Losses Covered*

    27.    The Travel Protection Certificate insures against certain losses that occur *pre-departure*, largely as the result of trip cancellation by the Insured for certain limited reasons. For example, if an Insured is prevented from traveling because they are in a car accident, or are in the military and are called to active duty, or lose their job, trip

cancellation coverage will cover certain losses such as deposits or prepaid travel arrangements.

### Post-Departure Losses Covered

28.    *Post-departure*, the coverages are much more expansive, covering a wide range of events and types of losses that can vastly exceed the cost of the trip.

29.    For example, the Travel Protection Certificate provides $50,000 worth of coverage each for Accidental Death or Dismemberment during the trip, Accidental and Sickness medical expense, and Emergency Medical Evacuation and return of remains. The Travel Protection Certificate also provides coverage for Nonmedical Emergency Evacuation coverage as the result of civil unrest or a natural disaster.

30.    The Travel Protection Certificate includes post-departure Trip Interruption coverage which will reimburse an Insured for additional costs incurred to rejoin a trip interrupted by the Insured's illness.

31.    The Travel Protection Certificate also includes Travel Delay coverage that pays for additional expenses (or reimburses the insured for the unused portion of prepaid expenses) when the trip is delayed because of weather, a strike, or a natural disaster, while the insured is en route to or on the trip.

32.    Other post-departure coverages include Lost Baggage and Personal Effects coverage for items lost while traveling.

### Post-Departure Coverages Do Not Become Effective Until Departure

33.    The Travel Protection Certificate expressly provides separate Effective Dates for when coverage becomes effective, and terminates, for each pre-departure and

post-departure coverage.

34.    Pre-Departure Trip Cancellation coverage begins when the premium is received, that is, when a Travel Protection Certificate is purchased.

35.    All post-departure coverages — Trip Interruption, Travel Delay, Accident and Sickness, and all other coverages — do not become effective until the Insured leaves home to start their trip.

36.    If a trip is cancelled, there is zero possibility that any post-departure insured peril will ever occur. For example, post-departure coverages include lost luggage *while traveling*, or medical expenses *while traveling*. If the insured never begins her insured trip, there is no risk that USFIC will ever have to pay for such expenses.

37.    When a trip is cancelled prior to departure, USFIC has not been *and cannot* be exposed to any risk of loss as to post-departure perils, and therefore has not earned the premiums paid to cover those risks.

38.    USFIC is capable of identifying the *pro rata* share of the premiums that is attributable to each benefit purchased under the policy.

## C.    COVID-19 Travel Restrictions

39.    On January 20, 2020, authorities diagnosed the first official case of COVID-19 in the United States, in a 35-year-old who had recently returned from Wuhan, China to the State of Washington. By January 30, 2020, there were nearly 8,000 confirmed cases of COVID-19 worldwide.

40.    In response to the rapidly increasing COVID-19 diagnoses worldwide, on January 30, 2020, the World Health Organization ("WHO") declared COVID-19 a

"Public Health Emergency of International Concern." The next day, U.S. State Department banned travel between the United States and China and on March 13, 2020, President Trump declared a public health emergency regarding COVID-19.

41.     On March 11, 2020, the WHO reclassified COVID-19 as a worldwide pandemic. That same night, then President Trump announced a moratorium on all flights from Europe (excluding Great Britain) for 30 days, only to extend that ban to Great Britain the very next day.

42.     By March 17, 2020, the European Union ("EU") had closed its borders to most foreign travelers, which ban on most foreign travel the EU extended several times.

43.     By the end of March 2020, the governors of most states had declared states of emergency due to COVID-19, and state and local officials across the country had issued stay-at-home orders that canceled public events, closed schools, and prohibited unnecessary travel.

44.     Numerous other countries also issued similar orders prohibiting unnecessary travel and, in some instances, barring entry to their country by U.S. citizens.

### D.     The Trip Cancellations

45.     As a result of the COVID-19 travel restrictions, the Travel Agencies with which Class Members booked travel and purchased insurance coverage cancelled their trips or "postponed" them for so long as to be a *de facto* cancellation.

46.     Many of the trips were cancelled by the Travel Agencies, the same companies that marketed and sold the Travel Protection Certificates on behalf of and as

agents for USFIC. Because they are agents of USFIC, the Travel Agencies' knowledge that the trips were cancelled and responsibility for the cancellations is imputed to the principal, USFIC.

> ### E.    The Cancellations Prevented the Post Departure Coverages From Becoming Effective And USFIC Was Never At Risk

47.    Because the trip cancellations occurred pre-departure, the Trip Interruption, Travel Delays, and Other Coverages, such as Lost Baggage, or medical emergencies, never became effective, and USFIC never was subject to any risk of payment, rendering those coverages illusory.

48.    Despite this, USFIC did not refund any unearned premiums to Insureds.

49.    USFIC never was at risk for any of the post-departure perils covered by the Travel Protection Certificates, because its own agents, or other third parties, cancelled the Trips, so these insurance contracts failed of their essential purpose, as USFIC could not provide the coverages because of the pandemic travel restrictions.

50.    USFIC neither accepted nor assumed any transferred risk of loss associated with any post-departure perils, and as such, provided no consideration in exchange for, and has not earned, the premiums it has been paid to cover those particular risks.

51.    In addition, USFIC has disclaimed any and all coverage based on the cancellation of these trips by its own agents on the basis that there is no coverage when the tour operators, which are USFIC's agents, cancel the tours, further confirming their lack of risk and the unearned nature of the premiums at issue.

52.     Having disclaimed any and all coverages for tours canceled by its own agents, USFIC has in bad faith retained the unearned premiums for all of the Travel Protection Plans.

53.     The Travel Protection Certificate does not pay any benefits for any loss of any kind based on the failure of any tour operator, or other travel supplier, to provide the bargained-for travel arrangements for reasons other than Bankruptcy or Default. Because it also excludes "Bankruptcy or Default or failure to supply services by a supplier of travel services," the Travel Protection Certificate effectively excludes payment of benefits for tour cancellations by its Travel Agencies for any reason whatsoever.

54.     Nowhere does the Master Policy or Travel Protection Certificate provide any basis to calculate any short rate premium refund, and the New Jersey Department of Insurance has not approved USFIC's premiums.

**F.    Allegations Related to Plaintiff Sara Kahl**

55.     On or about April 25, 2019, Plaintiff Sara Kahl booked trips for her two children, Madeline and Zackery, to travel to Washington D.C. and New York City with a school group on March 23 to March 28, 2020. She booked the trips through Travel Agency EF Education First International, Ltd. and its affiliates ("EF Tours").

56.     Included in each of the Kahl children's trip costs were $99 charges for Travel Protection Plans underwritten by USFIC, a total of $198 in premiums.

57.     Ms. Kahl purchased the Travel Protection Plans through EF Tours as USFIC's agent.

58.    USFIC markets and sells substantially identical policy certificates under the same Master Policy to travelers on numerous tours through numerous other Travel Agencies.

59.    The trip was scheduled to depart on March 23, 2020.

60.    On March 12, 2020, EF Tours cancelled the Kahl's trip and rescheduled it for September 2020.

61.    On March 22, 2020 Ms. Kahl contacted EF Tours requesting a full refund of her payments, which includes her travel insurance premium, as her children were not able to travel on those dates. She received only a partial refund, not including the travel insurance premium.

62.    Because of the trip cancellation, on March 22, 2020 Ms. Kahl also submitted insurance claims for both children's trips to USFIC's claims processor agent, Seven Corners, Inc. Those claims were denied on April 28, 2020, on the stated grounds that the policy did not cover such trip cancellations. No refund of the premium was offered.

63.    On January 27, 2021, Ms. Kahl wrote to both USFIC and Seven Corners requesting a refund of her premium.

64.    Seven Corners responded on January 28, 2021 restating that the policy lists specific reasons when cancellation benefits would apply and "[c]ancellation due to the threat of the Coronavirus (COVID-19) or a trip being postponed by the travel supplier/EF are not covered reasons" under the policy. No refund was offered by Seven Corners. USFIC never responded to her request.

65.    Although Ms. Kahl has received a partial refund of her trip costs from EF Tours, neither USFIC nor EF Tours has refunded any portion of the travel insurance premiums Ms. Kahl paid.

**H.    Allegations Related to Plaintiffs Joyce Pangelinan and Joseph Herrero**

66.    On or about September 19, 2019, Plaintiffs Joyce Pangelinan and her father, Joseph Herrero, booked a trip to travel to Ireland from February 21, 2020 through March 4, 2020. They booked the trip through EF Go Ahead.

67.    Included in Ms. Pangelinan and Mr. Herrero's trip costs were charges of $239 per person for Travel Protection Plans underwritten by USFIC, a total of $478 in premiums.

68.    Ms. Pangelinan and Mr. Herrero purchased the Travel Protection Plans through EF Go Ahead as USFIC's agent.

69.    USFIC markets and sells substantially identical policy certificates under the same Master Policy to travelers on numerous tours through numerous other Travel Agencies.

70.    Ms. Pangelinan and Mr. Herrero's trip originally was scheduled to depart on February 21, 2020. EF Go Ahead cancelled the trip due to low enrollment. Plaintiffs rescheduled for a trip to depart on March 27, 2020.

71.    On March 13, 2020, EF Go Ahead postponed their trip indefinitely due to COVID-19. Their trip was subsequently rescheduled and postponed multiple times and, at last count, until September 2021.

72.    In January 2021, Ms. Pangelinan and Mr. Herrero wrote to USFIC and

requested a refund of their unearned premium.

73.     In March 2021, Seven Corners responded, denying their refund request.

74.     Neither USFIC nor EF Tours ever refunded any portion of the travel insurance premium Ms. Pangelinan and Mr. Herrero paid.

**CLASS ALLEGATIONS**

75.     The Class is composed of all persons in the United States: who purchased travel insurance issued by USFIC, and due to COVID-19 travel restrictions, whose trips were canceled, or ostensibly "postponed" into 2021 or beyond, and who did not receive a refund of unearned premiums.

76.     The Class Period begins on January 1, 2018 and ends on the date when a class is certified in this case.

77.     The proposed Class meets the requirements for certification under Rule 23(a) and (b)(3) for the following reasons:

    a.  Numerosity: The Class is so numerous that joinder of all members is impracticable. The exact number and identity of individual members of the Class are unknown at this time, such information being in the sole possession of USFIC and obtainable by Plaintiffs only through the discovery process.

    b.  Commonality: Common questions of law and fact exist as to all members of the Class. These questions predominate over questions affecting individual Class Members. These common legal and factual questions include, but are not limited to: (a) Whether USFIC is required by law to

refund unearned premiums; (b) Whether USFIC has violated N.J. Rev. Stat. § 17:29C-4.1 by failing to refund unearned premiums; (c) Whether USFIC's conduct is unfair and deceptive in violation of the New Jersey Consumer Fraud Act; (d) Whether USFIC is required to provide premium refunds for risks that do not attach until after the scheduled departure of a trip when the trip is canceled; (e) Whether USFIC was unjustly enriched by its conduct; (f) Whether the obligation under New Jersey law to refund unearned premiums is an implied term of the contract of insurance; and (g) Whether the covenant of good faith and fair dealing obligated USFIC to refund the unearned premiums.

c. Typicality: Plaintiffs have the same interest in this matter as all Class Members, and Plaintiffs' claims arise out of the same set of facts and conduct as the claims of all Class Members. Plaintiffs' and Class Members' claims all arise out USFIC's uniform conduct and unlawful, unjust, unfair and deceptive acts and practices.

d. Adequacy: Plaintiffs have no interest that conflicts with the interests of the Class, and is committed to pursuing this action vigorously. Plaintiffs have retained counsel competent and experienced in complex consumer class action litigation. Accordingly, Plaintiffs and their counsel will fairly and adequately protect the interests of the Class.

e. Superiority: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the

Class. The injury suffered by each individual Class Member is relatively small compared to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by USFIC's conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of this case. Individualized rulings and judgments could result in inconsistent relief for similarly situated individuals. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

78.     As to each of the following Counts, Plaintiffs repeat and reallege the foregoing allegations as if fully set forth therein. Plaintiffs also reserve all rights to plead in the alternative, pursue inconsistent theories, and to seek contradictory redress until such time Plaintiffs must make a final election of remedies, including up to and until a favorable verdict.

## COUNT I
## VIOLATION OF THE NEW JERSEY RETURN OF UNEARNED PREMIUMS STATUTE

79.     Section 17:29C-4.1 of the New Jersey Revised Statutes requires that when

an insurance policy is cancelled, an insurer must determine the amount of premium

that was unearned, and return the unearned premiums to the insured:

### 17:29C-4.1. Return of unearned premiums; penalty

Whenever an insurance policy or contract is canceled, the insurer on
notice thereof shall return to the insured, within a reasonable time not to
exceed 60 days of cancellation or notice, whichever occurs last, or 60 days
after the completion of any payroll audit necessary to determine the
amount of premium earned while the policy was in force, on a short rate
basis the amount of gross unearned premiums paid; except for a policy or
contract for private passenger automobile insurance, which amount of
gross unearned premium shall be determined on a pro rata basis. In the
event that the insurer fails to return the gross unearned premiums to the
insured within the period provided for herein, the insurer shall, as a
penalty, in addition to the gross unearned premium, return to the insured
an additional amount equal to 5% of the gross unearned premium
computed on a monthly basis for each month or part thereof past the final
date on which the refund was due.

80.     When USFIC's agents cancelled the Insureds' trips, USFIC is deemed to

have cancelled the applicable Travel Protection Certificates as a matter of law, good

faith and fair dealing, and was on notice of its agents' cancellations.

81.     Upon cancellation of a policy of insurance under New Jersey law, the

insurer is obligated to return the unearned premium.

82.     USFIC violated Section 17:29C-4.1 of the New Jersey Revised Statutes by

failing to refund to Plaintiffs and the Class the unearned premiums within 60 days of

cancellation of the policies.

83.     Because USFIC has disclosed no basis upon which to calculate a short rate

refund, it should be ordered to refund the unearned premiums collected in full.

84.     Because USFIC has violated the New Jersey Return of Unearned

Premiums Statute, Plaintiffs and the Class are entitled to recover all unearned

premiums, plus a penalty of 5% per month as provided by the statute.

**COUNT II**
**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT**

85.    Through the conduct described above, USFIC has engaged in unfair and

deceptive acts and practices that resulted in injury to Plaintiffs and the other members

of the Class in violation of the New Jersey Consumer Fraud Act, N.J. Rev. Stat.§§ 56:8-1

to 56:8-195 ("NJCFA").

86.    USFIC's unfair and deceptive practices in violation of the NJCFA include

but are not limited to:

    a.   Failure to recognize the cancellation of the Travel Protection Certificates

        upon cancellation of the Trips by USFIC's agents, who both sold the

        policies and cancelled the Trips;

    b.   Failure to refund unearned premiums.

    c.   Unfair and deceptive conduct in connection with the sale of the Travel

        Protection Certificates by providing illusory post-departure coverage with

        no provision for refund; and

    d.   Failure to state in the Master Policy, Participation Agreement or Travel

        Protection Certificates the pre-requisites to trigger a refund of unearned

        premiums upon cancellation of the Travel Protection Certificates.

87.    USFIC acted willfully and knowingly.

88.    Plaintiffs and other members of the Class have suffered monetary

damages. USFIC is liable to Plaintiffs and other members of the Class for the damages they have suffered as a result of USFIC's actions, the amount of such damages to be determined at trial, plus treble damages, attorneys' fees and costs.

89.    USFIC should be enjoined from its unlawful refunding practices and failure to disclose its actual practices.

## COUNT III
## UNJUST ENRICHMENT

90.    USFIC has been unjustly enriched at the expense of Plaintiffs and other members of the Class as a result of USFIC's unfair conduct.

91.    Plaintiffs and the Class conferred a direct benefit on USFIC in the form of unearned, risk-free premiums.

92.    USFIC knowingly and willingly accepted and retained those benefits in violation of the obligation of good faith and fair dealing, Section 17:29C-4.1 of the New Jersey Revised Statutes and without other lawful justification.

93.    Whenever travel is cancelled by USFIC's agents or the Travel Agencies prior to commencement of the insured trip, USFIC's retention of the premiums paid for post-departure benefits is unjust and inequitable because USFIC is never placed in a position of being at risk of having to pay post-departure benefits to Plaintiffs and other members of the Class. Thus, such coverage is wholly illusory since the *sine qua non* of post-departure travel insurance is actual travel on the insured trip.

94.    Never having been placed at risk, USFIC's retention of these premiums is also unjust because they have provided no consideration in return for their retention of

these premiums.

95.     Nowhere in the Master Policy, Participation Agreements or the Travel Protection Certificates is there any provision setting forth the alleged right of USFIC to withhold refund of any premiums previously paid for post-departure benefits in the event that a trip is cancelled pre-departure. In fact, the Travel Protection Certificates sold by USFIC to Plaintiffs and the other members of the Class expressly state that Post-Departure Coverage will take effect on the scheduled departure date.

96.     Because USFIC did not provide any consideration for the premiums which are allocable to post-departure benefits, even if any portion of the insurance contract purported to allow retention of premiums paid for exclusively post-departure benefits when an insured does not commence travel, this provision would be void and/or ineffective as a matter of law.

97.     USFIC's retention of these premiums is unjust and inequitable.

98.     Plaintiffs and the Class are entitled to recover the gross insurance premiums attributable to Post-Departure Coverages.

**COUNT IV**
**BREACH OF CONTRACT/DECLARATORY JUDGMENT**

99.     Together with the Master Policy and Participation Agreements, the Travel Protection Certificates issued by USFIC to Plaintiffs and the Class are binding contracts (the "Contracts").

100.     The Contracts are silent as to whether USFIC is obligated to return the unearned premium when post-departure risks are not incurred because a covered trip

is not taken due to COVID-19.

101.    The provision of Section 17:29C-4.1 of the New Jersey Revised Statutes requiring USFIC to refund unearned premiums upon cancellation is an implied term of the Contracts.

102.    By failing to refund the unearned premiums, USFIC has breached the Contracts, and Plaintiffs and the Class have been injured as a direct and proximate result.

103.    Alternatively, if Section 17:29C-4.1 of the New Jersey Revised Statutes does not apply, Plaintiffs request the Court to supply the omitted term that USFIC shall return the unearned premium when post-departure risks are not incurred because a covered trip is not taken due to COVID-19.

104.    Supplying such a term comports with community standards of fairness and public policy.

## COUNT V
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

105.    Under New Jersey law, a covenant of good faith and fair dealing is implied into every contract.

106.    USFIC acted in bad faith and engaged in opportunistic advantage-taking by failing to refund unearned premiums, in light of COVID-19, depriving Plaintiffs and the Class of the right to receive the benefits of the parties' bargain in the Contracts.

107.    USFIC breached the obligation of good faith and fair dealing.

108.    Plaintiffs and the Class have been injured as a direct and proximate result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and other members of the Class, respectfully request that the Court:

A.      Certify the Class defined herein and designate Plaintiffs as the representatives of, and their undersigned counsel as counsel for, the Class;

B.      Award Plaintiffs and the Class damages, including treble damages and statutory penalties and interest, as allowed by law in an amount to be determined at trial;

C.      Award Plaintiffs and the Class restitution and/or disgorgement of ill-gotten gains, as appropriate;

D.      Enter judgment against USFIC and in favor of the Plaintiffs and other members of the Class;

E.      Award Plaintiffs and the Class costs and reasonable attorneys' fees, as allowed by law under the New Jersey Consumer Fraud Act;

F.      Award Plaintiffs and the Class their costs, including reasonable attorneys' fees, as allowed by law under the common fund doctrine and any other applicable statute or rule;

G.      Award Plaintiffs and the Class pre-judgment and post-judgment interest, as allowed by law;

H.      Award Plaintiffs and the Class injunctive and equitable relief, as appropriate, including a declaration that USFIC is required to refund unearned premiums; and

I.      Award such further and additional relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiffs, on behalf of themselves and the putative Class, demand a trial by jury on all issues so triable.

Date: April 28, 2021

Respectfully submitted,

By their attorneys,

*/s/ Patricia Mulvoy Kipnis*
Patricia Mulvoy Kipnis (BBO No. 016962003)
**Bailey & Glasser LLP**
923 Haddonfield Rd., Suite 307
Cherry Hill, NJ 08002
T. 856.324.8219
F. 304.342.1110
pkipnis@baileyglasser.com

John Roddy
Elizabeth Ryan
**Bailey & Glasser LLP**
176 Federal Street, 5th Floor
Boston, MA 02110
T. 617.439.6730
F. 617.951.3954
jroddy@baileyglasser.com
eryan@baileyglasser.com

Barry M. Altman
Brian T. Corrigan
**Altman & Altman**
404 Main Street, Suite 3
Wilmington, MA 01887
T. 978.658.3388
F. 978.694.4061
baltman@altmanattorneys.com
corriganlaw@gmail.com

Sean T. Carnathan
**O'Connor, Carnathan and Mack LLC**
67 South Bedford Street, Suite 400W
Burlington, MA 01803
T. 781.359.9002
F. 781.359.9001
scarnathan@ocmlaw.net