**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SARA KAHL, JOYCE PANGELINAN, and JOSEPH HERRERO, *on behalf of themselves and all others similarly situated*, | Civil Action No. 21-10359 (SDW) (JRA) |
| Plaintiffs, | **OPINION** |
| v. | August 21, 2023 |
| UNITED STATES FIRE INSURANCE COMPANY, | |
| Defendant. | |

**WIGENTON**, District Judge.

Before this Court is Defendant United States Fire Insurance Company's ("Defendant") Renewed Motion to Dismiss (D.E. 42) Plaintiffs Sara Kahl, Joyce Pangelinan, and Joseph Herrero's (collectively, "Plaintiffs") Complaint (D.E. 1 ("Compl.")) for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6).  Venue is proper under 28 U.S.C. § 1391.  This opinion is issued without oral argument pursuant to Rule 78.  For the reasons stated herein, Defendant's Motion to Dismiss is **GRANTED**.

**I.      BACKGROUND AND PROCEDURAL HISTORY**

Defendant is a Delaware corporation with a principal place of business in New Jersey. (Compl. ¶ 11.)  Plaintiffs are residents of Utah and Washington state who purchased group travel insurance plans ("Plans") issued by Defendant for trips planned in February and March 2020.  (*See id*. ¶¶ 1–2, 8–10, 55, 66.)  Plaintiffs purchased their Plans through tour operators, whom they allege

were acting as Defendant's agents, and they received a certificate of insurance ("Certificate") which stated the terms of coverage. (*Id.* ¶¶ 19, 21, 23; *see* D.E. 1-1 (Certificate).) All of the Plans are governed by a Master Policy (the "Master Policy" or "Group Policy") issued by Defendant to a trust it formed to serve as the policyholder (the "Policyholder Trust"). (Compl. ¶¶ 3, 16.) The tour operators who sold Plaintiffs their Plans executed a participation agreement with Defendant in which they agreed to participate in the Policyholder Trust under the Master Policy. (*Id.* ¶ 19.)

Due to COVID-19 travel restrictions, the tour operators ultimately canceled the trips for which Plaintiffs purchased this travel insurance, or else postponed them for so long as to be a *de facto* cancellation. (*Id.* ¶¶ 45, 60, 70–71.) In January 2021, Plaintiffs requested refunds for their travel insurance premiums, which Defendant's agent denied. (*Id.* ¶¶ 63–65, 72–74.) Thus, on April 28, 2021, Plaintiffs filed this putative class action to recover premiums they allege were unlawfully retained by Defendant from themselves and a nationwide class of individuals who purchased travel insurance from Defendant for trips that were canceled or postponed due to COVID-19 travel restrictions. (*Id.* ¶¶ 2–7, 35–38, 46–54, 75.)

The Complaint asserts five claims, all arising under New Jersey law—violations of N.J. Stat. Ann. § 17:29C-4.1 (Count I) and the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.* (Count II); and common law claims for unjust enrichment (Count III), breach of contract (Count IV), and breach of the duty of good faith and fair dealing (Count V). (*Id.* ¶¶ 79–108.) The Complaint alleges that New Jersey law governs Plaintiffs' rights because the "Master Policy which governs all the group plans at issue contains an explicit choice of law provision that dictates New Jersey law governs." (*Id.* ¶ 3.) More specifically, it alleges that Defendant issued the Master Policy to the Policyholder Trust; the Policyholder Trust is located at the same address as Defendant's administrative offices in Eatontown, New Jersey; and the Master Policy elected to

apply the laws of the state where, in quotes, "the Policy is issued." (*Id*. ¶¶ 16–22.) The Complaint asserts subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). (*Id*. ¶ 12.)

On September 10, 2021, Defendant moved to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim, on the grounds that Plaintiffs had not suffered any injury in New Jersey and thus did not have standing to bring claims under New Jersey law. (*See* D.E. 9, 11, 13.) Defendants asserted that the Participation Agreement between the tour organizations and the Trust mistakenly referenced Defendant's administrative offices' address in New Jersey as the address of the Trust, but that the Trust was in fact located in Illinois. (*See* D.E. 9-1 ¶ 10.) On April 18, 2022, this Court denied that motion without prejudice to refiling after jurisdictional discovery. (D.E. 15 at 5–6.) From June through December 2022, the parties engaged in jurisdictional discovery. (*See* D.E. 23, 32, 39.) On January 10, 2023, Defendant filed the instant renewed motion to dismiss, and the parties timely completed briefing. (D.E. 42, 45, 49.)

## II.  LEGAL STANDARDS

This Court may dismiss a claim under Rule 12(b)(1) for lack of subject matter jurisdiction, including a lack of standing under Article III of the Constitution. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). Article III limits the jurisdiction of federal courts to resolving "Cases" and "Controversies," U.S. Const. art. III, and thus prohibits this Court from adjudicating "hypothetical or abstract disputes." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006).

To establish constitutional standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC*, 141 S. Ct. at 2203 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)). The party invoking this Court's jurisdiction bears the burden of demonstrating that this Court has jurisdiction over its claims, and "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC*, 141 S. Ct. at, 2207–08; *see Winer Fam. Tr. v. Queen*, 503 F.3d 319, 325 (3d Cir. 2007).

Although it is sometimes referred to as "statutory standing," the question of whether a plaintiff has a cause of action under a particular statute or state law is not jurisdictional. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125–28 & n.4 (2014); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("[T]he absence of a valid . . . cause of action does not implicate subject-matter jurisdiction.")  This question is more appropriately raised in a Rule 12(b)(6) motion, since it concerns whether a plaintiff has "state[d] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see Bell v. Hood*, 327 U.S. 678, 682 (1946) (stating that jurisdiction "is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover" because "the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction."); *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 535–36 (7th Cir. 2011) (distinguishing between standing and the question of whether a claim is cognizable under a particular state's law); *In re Processed Egg Prod. Antitrust Litig.*, 851 F. Supp. 2d 867, 886 (E.D. Pa. 2012) (same); *Miller v. Samsung Elecs. Am., Inc.*, 2015 WL 3965608 at *3 (D.N.J. June 29, 2015) ("[T]he question of whether an

injured Plaintiff can bring a claim under the laws of a state in which he does not reside is not a question of Article III constitutional standing, but rather a non-jurisdictional question of statutory standing.")

An adequate complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim for relief must be "plausible" and a complaint will not survive a motion to dismiss if the "well-pleaded facts do not permit the court to infer more than the mere possibility" of defendant's liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (noting that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief"). Insofar as a complaint alleges fraud or misrepresentation, it "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

When considering a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (discussing the *Iqbal* standard). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When considering a factual attack on subject matter jurisdiction under Rule 12(b)(1), after allowing a plaintiff to submit responsive evidence, this Court may consider and weigh evidence outside the pleadings to determine its jurisdiction. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). This Court may also consider documents outside the pleadings in considering a Rule 12(b)(6) motion, if those documents are "integral to or explicitly relied upon in the complaint," attachments to the complaint, or matters of public record. *Davis v. Wells Fargo*, 824 F.3d 333, 351 (3d Cir. 2016) (quotation marks omitted).

### III.  DISCUSSION

Plaintiffs' allegations are sufficient to confer constitutional standing, but they are insufficient to establish claims under the laws of New Jersey. Plaintiffs have not pleaded claims under any other state's laws, so this Court will dismiss the Complaint for failure to state a claim upon which relief can be granted, without prejudice to Plaintiffs repleading their claims under the laws of another state.[1]

#### A.  This Court has Subject Matter Jurisdiction

This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the Complaint alleges that Plaintiffs and Defendant are citizens of different states, the amount in controversy exceeds $5,000,000, and the proposed class has at least 100 members. 28 U.S.C. § 1332(d). (Compl. ¶¶ 8–13.) Plaintiffs' allegations are sufficient to confer Article III standing. They allege that Defendant caused them a concrete injury by

---

[1] Plaintiffs contend in their opposition brief that Illinois law governs if New Jersey law does not; however, this Court will not *sua sponte* consider the merits of Plaintiffs' claims under Illinois law. (D.E. 45 at 9.) A "complaint may not be amended by the briefs in opposition to a motion to dismiss," and, in any event, the opposition does not identify which Illinois statutes might apply to this action. *Commw. of Pa. ex. rel Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 181 (3d Cir. 1988) (quotation marks omitted). Thus, as Plaintiffs have requested in the alternative, this Court will allow Plaintiffs to replead their claims under Illinois law or, as applicable, the law of another state besides New Jersey. *See* D.E. 42-1 at 24 n.12 (Defendant suggesting that laws of other states, including Utah and Washington, may apply).

6

denying their requests to refund premiums related to post-departure travel insurance coverage, and they demonstrate that this injury may be redressed by a decision of this Court ordering Defendant to refund them. *See TransUnion LLC*, 141 S. Ct. at 2203; *In re Processed Egg Prod. Antitrust Litig.*, 851 F. Supp. 2d at 886. Accordingly, this Court will not dismiss the Complaint for lack of jurisdiction.

### B. Plaintiffs Fail to State a Claim Upon Which Relief may be Granted

Plaintiffs have not alleged a cognizable cause of action because the choice-of-law provision in the Master Policy applies the laws of the state where "the Policy was issued," and review of the documents comprising the contract between the parties has demonstrated that that state is Illinois, despite one incorrect statement of the relevant address on a document that Plaintiffs did not reasonably rely upon.[2]

#### i. The Parties' Contracts

As described above, Plaintiffs' claims against Defendant arise out of group travel insurance plans ("Plans"), which are contracts. (Compl. ¶¶ 3, 16, 19.) *See Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 804 (7th Cir. 2020); *Suskind v. N. Am. Life & Cas. Co.*, 607 F.2d 76, 81 (3d Cir. 1979). As stated in the Master Policy, each Plaintiff's "entire contract is made up of the Master Policy, the Policyholder's Master Application, . . . the Participation Agreement, . . . the Certificates of Insurance, and the individual enrollment forms of the Insured." (D.E. 43-2 at 41.)

Plaintiffs allege that the terms of their Plans are stated in the Travel Protection Certificate attached to the Complaint, which states that the travel insurance benefits provided by the Plans are "subject to all of the terms and conditions of the Group Policy." (*See* D.E. 1 ¶ 21; D.E. 1-1.) It

---

[2] In reaching this conclusion, which does not concern jurisdiction, this Court has only considered the Complaint and the documents relied upon in the Complaint to support Plaintiffs' allegations that New Jersey law governs their rights in this matter. *See Davis*, 824 F.3d at 351. This Court also accepts Plaintiffs' allegations as true, except insofar as these contractual documents relied upon in the Complaint show otherwise. *Phillips*, 515 F.3d at 231.

7

states that "[a]ll policy terms will be interpreted under the laws of the state in which the [Group] Policy was issued." (D.E. 1-1 at 16.)  The only reference to where the Group Policy was issued is under an amendment for residents of Connecticut, which states that "Upon request by an Insured, the Master Group Policy, sitused in Illinois, is available for examination." (*Id*. at 9.)  The Master Policy, formally entitled the Master Travel Protection Insurance Policy, states that the "Policyholder is the Trustee named by a trust agreement," and notes that the Master Policy's terms "will be interpreted under the laws of the state in which the Policy was issued." (D.E. 43-2 at 2, 40–41.)

The Policyholder Trust's Illinois location is confirmed by the Trust Agreement which formed the Policyholder Trust, formally entitled the "Group and Blanket Accident & Health Insurance Trust." (D.E. 43-4 at 2; *see* Compl. ¶ 16.)  The Policyholder Trust was formed on May 30, 2001, when the Trust Agreement was executed in Illinois between Marine Bank in Springfield, Illinois, as trustee, and TIG Insurance Company as administrator.  (*See* D.E. 43-4.)  In 2005, this trust agreement was amended to include Defendant as an administrator.  (*Id*. at 16.)  Article XII of the Trust Agreement states that the Trust was "created and accepted in the state of Illinois and all questions pertaining to its validity, construction, and administration shall be determined in accordance with the laws of Illinois." (*Id*. at 10.)  The purpose of the Trust, as stated in this agreement, is "to provide through blanket or group policies issued by insurance carriers, insurance for persons affiliated with Participating Organizations." (*Id*. at 2.)  It explains that organizations may participate in the Trust by executing a Participation Agreement.  (*Id*. at 3.)

The Participation Agreements, through which the tour operators, EF Explore America, Inc. and EF Tours, LLC, agreed to participate in the Policyholder Trust in order to be able to offer insurance coverage under the Group Policy, mistakenly list a New Jersey address.  (D.E. 43-5 at

8

2–3; *see* Compl. ¶¶ 16, 19.)  These agreements correctly state that the Policyholder Trust is the policyholder, but they mistakenly state that the policyholder's address is in Eatontown, New Jersey—the location of Defendant's administrative offices—instead of Springfield, Illinois, where the Trust was actually located.  (D.E. 43-5 at 2–3; D.E. 43-4 at 2.)

### ii. Choice-of-Law Analysis

To determine which state's laws govern the substantive issues in this diversity action, this Court applies New Jersey's choice-of-law rules.  *Warriner v. Stanton*, 475 F.3d 497, 499–500 (3d Cir. 2007).  Plaintiffs bring contract claims, and related quasi-contract and tort claims, under New Jersey common law and consumer fraud statutes.  (Compl. ¶¶ 79–108.)  *See Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 254–55 (3d Cir. 2010) (addressing NJCFA claim); *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 723 (N.J. 2007) (discussing New Jersey unjust enrichment claim).  New Jersey applies the "most significant relationship" test of the Restatement (Second) of Conflict of Laws (the "Restatement"), under which there is a presumption that the "local law of the state of the injury will apply" to tort claims.  *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 455 (N.J. 2008) (citing Restatement § 145).  As for contracts, "when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." *North Bergen Rex Transport, Inc. v. Trailer Leasing Co.,* 730 A.2d 843, 847 (N.J.1999) (quotation marks omitted).

Here, Plaintiffs' allegations that their rights in this dispute are controlled by the choice-of-law provision in the Master Policy are supported by the contractual documents, except that the Eatontown, New Jersey, address is based on a mistake. (Compl. ¶¶ 16–22; see D.E. 45 at 21.)  As in *North Bergen Rex Transport, Inc.,* the parties here agreed that their contract would be governed by Illinois law—the place where Defendants issued the Group Policy to the Trust—and the parties

present no reason why it would be contrary to New Jersey's public policy to uphold that contractual choice.  730 A.2d at 847; *see Cooper v. Samsung Elecs. Am., Inc.*, 2008 WL 4513924, at *2 (D.N.J. Sept. 30, 2008), *aff'd*, 374 F. App'x 250 (3d Cir. 2010).

Plaintiffs' arguments that the Trust is a "sham" are unavailing, as they are contrary to the allegations in the Complaint and Plaintiffs may not amend their Complaint in opposition to a motion to dismiss.  *See Commw. of Pa. ex. rel Zimmerman v. PepsiCo, Inc.,* 836 F.2d at 181. Plaintiffs also assert that the mistake of address in the Participation Agreement gave them, as insureds, a "reasonable expectation . . . that New Jersey law governs." (D.E. 45 at 26.) While it is true that New Jersey law requires courts to interpret any ambiguities in an insurance contract "to comport with the reasonable expectations of the insured," nothing alleged in the Complaint supports a finding that Plaintiffs reasonably expected their Plans were governed by New Jersey law when they purchased their Plans.  *President v. Jenkins*, A.2d 247, 254 (N.J. 2004). Plaintiffs do not allege that they received a copy of the Participation Agreements, which were executed by other parties; they only allege that they received Certificates of Insurance which stated the terms of their travel insurance coverage.  (Compl. ¶ 21.)  The Certificate of Insurance attached to the Complaint gives no expectation whatsoever that New Jersey law governs disputes arising out of the Plans.  To the contrary, it states that the Master Group Policy is "sitused in Illinois." (D.E. 1-1 at 9.)

In sum, Plaintiffs' allegations that New Jersey law governs their rights in this action are disproven by the contractual documents relied upon in the Complaint and, thus, Plaintiffs have failed to state a claim upon which this Court may grant relief by only asserting claims under New Jersey law.  *See* Fed. R. Civ. P. 12(b)(6); *Steel Co.*, 523 U.S. at 89.

10

**IV.     CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) is **GRANTED**, and the Complaint is **DISMISSED** without prejudice to Plaintiffs bringing their claims under the laws of a state other than New Jersey.

          /s/ Susan D. Wigenton     
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:       Clerk
cc:         José R. Almonte, U.S.M.J.
             Parties